UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

J.M.H.,[1]

      Petitioner,

v.

JOSEPH E. FREDEN, et al.,

      Respondents.

24-CV-875-LJV
DECISION & ORDER

---

J.M.H. has been detained in the custody of the United States Department of Homeland Security ("DHS") for more than 18 months. See Docket Item 1 at ¶ 1. On September 16, 2024, she filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging the validity of her detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Docket Item 1. She also has moved to proceed under a pseudonym, file two exhibits[2] under seal, and "seal all . . . subsequent filings, orders, and opinions that implicate [her] safety and privacy interests." Docket Item 2; Docket Item 2-1 at 2. The government filed a letter in response to the petition, Docket Item 6, and J.M.H. replied, Docket Item 7.[3]

---

[1] J.M.H. has moved to proceed under a pseudonym. Docket Item 2. For the reasons explained below, the Court grants that request. See infra Section I.

[2] The motion refers to "an exhibit," Docket Item 2 at 1, but J.M.H. submitted two separate documents to this Court for sealing.

[3] The government has taken no position on J.M.H.'s motion to proceed under a pseudonym and for sealing and did not file any formal response to it. Docket Item 2 at 2; see Docket Item 3 at 1 n.1 (setting deadline for response).

For the reasons that follow, this Court grants J.M.H.'s petition in part. It also grants her motion to the extent she seeks to proceed under a pseudonym and to file two exhibits under seal but denies it without prejudice insofar as she seeks to seal all subsequent documents filed in this action "that implicate [her] safety and privacy interests." *See* Docket Item 2-1 at 2.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

J.M.H. is a native and citizen of Honduras. *See* Docket Item 1 at ¶ 6. She entered the United States in 2002 and "has lived [here] continuously since [then]." *Id.* On December 20, 2021, she was convicted of engaging in sexual contact with a minor in violation of New York State Penal Law § 130.45 and "sentenced to three years['] incarceration . . . and ten years' post-release supervision." Docket Item 1 at ¶ 6; Docket Item 6 at 2.[5]

In February 2023, while J.M.H. was in state custody, United States Immigration and Customs Enforcement ("ICE") initiated removal proceedings against her. Docket Item 6 at 2; *see also* Docket Item 1 at ¶¶ 38, 40. "Through pro bono counsel, . . . J.M.H. filed an application [for] asylum, withholding of removal[,] and deferral under the United Nations Convention Against Torture (CAT)." Docket Item 1 at ¶ 41. Although J.M.H. and DHS then "filed a joint memorandum and . . . stipulation requesting that the [i]mmigration [j]udge grant J.M.H. . . . relief" under CAT, the immigration judge denied

---

[4] The following facts are taken from J.M.H.'s petition, Docket Item 1, and the government's response, Docket Item 6, and are undisputed.

[5] Page numbers in docket citations refer to ECF pagination.

J.M.H.'s application on March 25, 2024.  Docket Item 1 at ¶¶ 42-43; Docket Item 6 at 2.  About three weeks later, DHS and J.M.H. jointly filed a motion for reconsideration, which the immigration judge denied.  Docket Item 1 at ¶¶ 45-46; Docket Item 6 at 2.  J.M.H. has appealed the immigration judge's decision, and that appeal remains pending.  *See* Docket Item 1 at ¶¶ 44, 47-48; Docket Item 6 at 3.

On September 16, 2024, while her appeal was pending, J.M.H. filed this habeas petition as well as a motion to proceed anonymously and for sealing, and the parties briefed the petition as described above.  *See* Docket Items 1, 2, 6, and 7.

## DISCUSSION

**I.    MOTION TO PROCEED UNDER A PSEUDONYM AND FOR SEALING**

J.M.H. has moved to proceed under a pseudonym, file two exhibits under seal, and seal remaining exhibits and all subsequent filings, orders, and opinions that "implicate [her] safety and privacy interests."  Docket Item 2 at 1; Docket Item 2-1 at 2.  For the reasons that follow, the Court grants that motion in part and denies it in part.

**A.    Proceeding under a Pseudonym**

In federal court, "[t]he title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  "Th[at] requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008).  In fact, "pseudonyms are the exception and not the rule," and the party seeking anonymity "must make a case rebutting" the "presumption of disclosure."  *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020) (per curiam).  A plaintiff meets that burden

3

only when "the plaintiff's interest in anonymity" outweighs "the public interest in disclosure and any prejudice to the defendant."  *Sealed Plaintiff*, 537 F.3d at 189.

The Second Circuit has provided a "non-exhaustive" list of ten factors for courts to consider when determining whether a plaintiff should be permitted to proceed under a pseudonym:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of h[er] age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press h[er] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose h[er] identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (alterations, citations, and internal quotation marks omitted).  After weighing those factors, this Court concludes that J.M.H. should be permitted to proceed by pseudonym.

First, the claims here involve allegations of a "sensitive" and "personal nature." *Id.* at 190 (factor one).  J.M.H. seeks asylum based on her fear of persecution in Honduras due to her identity as a transgender woman.  *See* Docket Item 1 at ¶ 6.  Such claims clearly are both "sensitive" and "personal."  *See MM v. Mayorkas*, 2024 WL 1795766, at *2 (S.D.N.Y. Apr. 25, 2024) (granting motion to proceed anonymously

4

where "[t]he facts underlying [p]laintiff's claim"—namely, "allegations underlying her asylum application" regarding her "fear of persecution and retaliation in Tunisia due to her sexuality"—involved a "highly sensitive and personal matter").

The second, third, and fourth factors—all of which concern the potential harm of identification—also weigh in favor of allowing J.M.H. to proceed anonymously. *Sealed Plaintiff*, 537 F.3d at 190. J.M.H. says that the disclosure of her identity "could cause harm if she is removed or during the time she remains in ICE custody." Docket Item 2-1 at 3. More specifically, J.M.H. fears that she may be subjected to harassment or other violence based on her identity as a transgender woman either at BFDF or in Honduras. Docket Item 2-1 at 3-5; *see* Docket Item 1 at ¶ 6. "Federal courts have permitted asylum seekers to proceed anonymously in federal court proceedings," noting that such litigants are "particularly vulnerable to retaliation if their names are revealed." *MM*, 2024 WL 1795766, at *2 (collecting cases). Because J.M.H. is not only an asylum seeker but also one who has expressed a specific and credible gender-based fear that she may suffer persecution if her identity is revealed, *see* Docket Item 2-1 at 3-5; Docket Item 1 at ¶¶ 6, 17-48, this factor weighs heavily in favor of granting her motion to proceed under a pseudonym, *see MM*, 2024 WL 1795766, at *2.

Other factors likewise weigh in favor of allowing J.M.H. to proceed by pseudonym. For one thing, the only adverse party is the government. *See Sealed Plaintiff*, 537 F.3d at 190 (fifth factor). Courts are more likely to allow a plaintiff to proceed under a pseudonym when the defendant is a government entity because "[s]uits against the government involve no injury to the [g]overnment's reputation." *See Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 406 (S.D.N.Y. 2019) (citation and

5

internal quotation marks omitted); *see also Doe v. Smith*, 2018 WL 11584808, at *1 (D. Mass. Nov. 5, 2018) (similar).  Moreover, J.M.H.'s identity has not been disclosed to the public, *see* Docket Item 2-1 at 4, and that supports her motion as well, *see Sealed Plaintiff*, 537 F.3d at 190 (factor seven).

Finally, the public interest in knowing the details of J.M.H.'s identity is weak here, where the dispute before this Court turns on the constitutional question of whether a detainee in her circumstances is entitled to a bond hearing.  *See id.* (factor nine); *see also Does 1-2 v. Hochul*, 2022 WL 836990, at *2, *10 (E.D.N.Y. Mar. 18, 2022) (noting that "the identity of each" plaintiff added "little-to-no value" when the lawsuit "rais[ed] an abstract question of law" about the facial constitutionality of a state regulation).  And that is especially true because both sides agree that the answer to the purely legal question is controlled by recent Second Circuit precedent.  *See* Docket Item 6 at 1-2; Docket Item 7 at 1.

The remaining factors are relatively neutral.  The government knows J.M.H.'s identity, and it has not argued that it would be prejudiced if she proceeds anonymously.  *See* Docket Item 2-1 at 7; Docket Item 6 at 1-4; *see also Sealed Plaintiff*, 537 F.3d at 190 (factor six).  And while there may be "alternative mechanisms for protecting the confidentiality of the plaintiff," *Sealed Plaintiff*, 537 F.3d at 190 (factor ten), those mechanisms might risk disclosure and therefore do not outweigh the factors favoring anonymity—in particular, the possible harm to J.M.H.  Finally, although the public has an interest in this litigation, that interest does not necessarily extend to the exact identity of the plaintiff.  *See id.* (factor eight).  And the Court can always require J.M.H. to proceed by her full name if circumstances change.  *See Doe v. Gooding*, 2021 WL

5991819, at *3 (S.D.N.Y. July 29, 2021) (granting plaintiff's motion to proceed by pseudonym "without prejudice to future objection from [d]efendant").

For all those reasons, J.M.H.'s motion to proceed by the pseudonym of her initials is granted.

### B.     Sealing an Exhibit

Under Local Rule of Civil Procedure 5.3(a), "parties, complaints, and documents are [presumptively] publicly accessible," and "[a] party seeking to have a case, party, complaint, document, or portion of a document filed under seal bears the burden of demonstrating that such material should be sealed under applicable law." That rule is consistent with the longstanding "'presumption of access' to judicial records," which is rooted in the Constitution as well as the common law. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141 (2d Cir. 2016) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006)); *see also United States v. Erie Cnty.*, 763 F.3d 235, 238-39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government.").

To determine whether a right of access attaches to a filing, the court must first decide whether the record at issue constitutes a "judicial document." *Bernstein*, 814 F.3d at 141. The Second Circuit has explained that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access"; instead, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). If a court determines that a filing is a "judicial

document[]," that document may be sealed only "if a sufficiently compelling countervailing interest is demonstrated," *United States v. King*, 2012 WL 2196674, at *1-2 (S.D.N.Y. June 15, 2012) (citing *Lugosch*, 435 F.3d at 120) (common law standard), and if the court makes "'specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest,'" *id.* at *2 (quoting *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 13-14 (1986)) (First Amendment standard).

In this case, J.M.H. seeks to file two documents under seal: her brief in support of her appeal to the Board of Immigration Appeals and her personal statement in support of her fear-based applications for relief from removal to Honduras. Those documents are largely irrelevant to this Court's disposition of J.M.H.'s habeas petition, which turns not on the substantive merits of her immigration case but on the fact of her detention during the course of those proceedings. Indeed, this Court does not refer to or rely on either of the exhibits throughout the course of its analysis below. *See infra* Section II. So it is not clear that the exhibits that J.M.H. seeks to file under seal are in fact judicial documents to which a right of access attaches.

But even if the two exhibits are judicial documents, this Court grants J.M.H.'s motion to seal them for same reasons that led this Court to allow J.M.H. to proceed by pseudonym. *See supra* Section I.A. More specifically, the potential harm of disclosing J.M.H.'s identity—including the fact that it could cause her to be subject to persecution and harassment—outweighs the public's interest in disclosure under both the common law and First Amendment standards. *See King*, 2012 WL 2196674, at *2; *see also Kharis v. Sessions*, 2018 WL 5809432, at *3 (granting petitioner's motion to file

8

"portions of his asylum application" under seal based on finding that there were "compelling reasons to keep th[e] . . . information confidential, given the sensitive nature of asylum applications alleging fear of persecution or harassment"). J.M.H.'s motion to seal the two documents therefore is granted as well.

### C.    Future Filings and Court Documents

J.M.H. also moves to seal "all other subsequent filings, orders, and opinions that implicate [her] safety and privacy interests." Docket Item 2-1 at 2. As noted above, to determine whether sealing is justified with respect to any particular document, the Court must determine whether the document is "judicial" and if so, whether other interests nonetheless justify sealing. *See King*, 2012 WL 2196674, at *1-2. Because the Court is unable to make such findings in the abstract, it denies without prejudice J.M.H.'s motion to seal all future filings that might implicate her safety and privacy interests. J.M.H. may move to seal any particular filing that she believes should be sealed to protect her specific interests.

To the extent that J.M.H. moves to seal this Court's decision on her petition—that is, this decision and order—the Court also denies her motion. Again, the Court's decision here turns not on the substance of J.M.H.'s asylum claim but on the process that is due to her as an immigration detainee. *See infra* Section II. As such, the details the decision refers to focus on the facts of J.M.H.'s detention, rather than biographical details that might identity her. *Id.* Moreover, this Court already has granted her motion to proceed under a pseudonym, *see supra* Section I.A, and J.M.H. does not identify any reason why that is not sufficient to protect her privacy and safety concerns here, *see generally* Docket Item 2-1.

9

In sum, J.M.H.'s motion is granted insofar as she seeks to proceed under a pseudonym and to file two exhibits under seal. It is denied without prejudice to the extent that she asks for all future filings and documents that implicate her privacy and safety interests to be filed under seal.

## II.   HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). J.M.H. alleges that her continued detention violates her right to procedural due process under the Constitution. *See* Docket Item 1 at ¶¶ 59-63. She asks this Court to "[g]rant a writ of habeas corpus directing [the government] to release [her] from further unlawful detention" or, "[i]n the alternative," to order that she be afforded a bond hearing. Docket Item 1 at 13. For the reasons that follow, this Court agrees that J.M.H.'s continued detention absent a bond hearing violates her due process rights and grants her petition in part.

Section 1226 of the Immigration and Nationality Act "generally governs the process of . . . detaining" noncitizens during removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1226). While the government "may release" noncitizens detained under section 1226(a), those detained under section 1226(c)—which applies to noncitizens who have committed certain criminal offenses or engaged in certain terrorist activities—must be detained unless narrow circumstances related to witness protection are met. *Id.* at 288-89. In *Jennings v. Rodriguez*, the Supreme Court held that the statute does not require—and in fact prohibits—the

government from offering a noncitizen detained under section 1226(c) the opportunity to challenge the detention at a bond hearing.  *Id.* at 303.  But the Court declined to decide whether the Constitution nonetheless requires that noncitizens held under section 1226(c) be afforded such an opportunity.  *Id.* at 312.

In *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), the Second Circuit answered that question, holding that "a noncitizen's constitutional right to due process precludes . . . unreasonably prolonged detention under section 1226(c) without a bond hearing."  *Id.* at 138.  Further, it held that the three-factor balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), "supplies the proper framework for determining when and what additional procedural protections are due such a detainee."  *Black*, 103 F.4th at 138.  More specifically, the Second Circuit explained that courts should analyze a noncitizen's due process challenge to detention "under the *Mathews* factors," including

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Black*, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335).

Like the noncitizens in *Black*, J.M.H. is detained under section 1226(c).  Docket Item 1 at ¶ 2; Docket Item 6 at 1.  In fact, the government has conceded that case's applicability here:  In its response to J.M.H.'s petition, the government says that it "disagrees with the Second Circuit's decision in *Black v. Decker*" but acknowledges that "this Court is bound by *Black* and that applying *Black* in this case likely would lead to a grant of [J.M.H.'s] habeas petition."  Docket Item 6 at 3.  For the reasons that follow, this

11

Court agrees: *Black* controls, and applying the *Mathews* factors necessarily requires this Court to grant J.M.H.'s petition in part.

### A. The Private Interest Affected

As an initial matter, the Court finds that the "private interest affected" is a compelling one. Indeed, as the Second Circuit explained in *Black*, the private interest implicated in immigration detention cases is "the most significant liberty interest there is—the interest in being free from imprisonment." 103 F.4th at 151 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). And while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999), J.M.H. has lived in this country for more than two decades, Docket Item 1 at ¶ 6. Further, she has appealed the immigration judge's removal order, and her case remains pending before the Board of Immigration Appeals. *See id.* at ¶ 48; Docket Item 6 at 3. So her interest in liberty *in the United States* must be particularly strong for her to subject herself to prolonged detention during the appeals process, which can be lengthy. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

Moreover, J.M.H. has been in DHS custody for more than 18 months. *See* Docket Item 1 at ¶ 1. In *Black*, the Second Circuit held that even a "seven-month-long detention" absent procedural protections was a "serious[] infringe[ment]" of liberty. 103 F.4th at 151. And while, like the petitioners in *Black*, J.M.H.'s "detention[] in some sense w[as] the result of a criminal adjudication, since a conviction was the premise for

12

applying section 1226(c)," she has "served h[er] entire sentence" of incarceration.[6]  *Id.* (internal quotation marks omitted); *see* Docket Item 1 at ¶ 36, 38.  Thus, her current "detention[] d[oes] not arise from new or unpunished conduct."  *Black*, 103 F.4th at 151 (citation and internal quotation marks omitted); *see* Docket Item 1 at ¶¶ 36, 38.

In sum, as in *Black*, "the first *Mathews* factor weighs heavily in favor of" J.M.H.  *See Black*, 103 F.4th at 152.

### B. The Risk of Erroneous Deprivation and the Value of Additional Procedural Safeguards

In light of the procedures used thus far, there is a significant risk of an erroneous deprivation of J.M.H.'s liberty.  As the Second Circuit explained, "the 'procedures used' for section 1226(c) detainees are very few" and "include no mechanism for a detainee's release, nor for individualized review of the need for detention."  *Black*, 103 F.4th at 152.  In fact, as already noted, section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether she is actually a danger or a flight risk.  *See Jennings*, 583 U.S. at 303.  And "[i]n the absence of any meaningful initial procedural safeguards, . . . almost *any* additional procedural safeguards at some point in the detention would add value."  *Black*, 103 F.4th at 153.

Indeed, J.M.H has had no opportunity to challenge the basis for her detention—to argue, for instance, that she poses no danger to the community or risk of flight while her appeal proceeds.  *See id.*; Docket Item 1 at ¶ 2.  So this Court finds—just as the Second Circuit did in *Black*—that an "individualized bond hearing at which an

---

[6] As noted above, J.M.H. was sentenced to 10 years' post-release supervision in addition to the two years' incarceration that she served prior to her transfer to BFDF. *See* Docket Item 1 at ¶¶ 36, 38.

13

[immigration judge could] consider" whether those factors justify J.M.H.'s continued detention would add significant value here. 103 F.4th at 153.

The second factor also weighs in J.M.H.'s favor.

### C. The Government's Interest

Finally, this Court recognizes that the government's interest in detaining J.M.H. also may be strong. In mandating the detention of noncitizens who have committed certain crimes, section 1226(c) reflects a congressional purpose of reducing the risk of flight and danger to the community. *See Demore v. Kim*, 538 U.S. 510, 518-19 (2003); *see also Jennings*, 583 U.S. at 303-04. It is "well[ ]established" that the government has a "legitimate" and compelling interest in both those aims. *Black*, 103 F.4th at 153.

But those interests do not outweigh J.M.H.'s liberty interest. As already explained, J.M.H. has had no opportunity to challenge the statutory assumption that there is *any* risk she will flee or endanger the community while her case proceeds. Therefore, absent a bond hearing, it is not even clear that J.M.H.'s detention is required to serve the government's interests. Further, the government has not identified any special interests that would justify J.M.H.'s continued detention here without an individualized bond hearing. *See generally* Docket Item 6.

The third factor therefore weighs in J.M.H.'s favor as well.

### D. Conclusion

In sum, the Court finds that, under the *Mathews* framework, J.M.H.'s continued detention absent any procedural protections violates the Due Process Clause. The Court nonetheless declines to grant J.M.H.'s first request for relief: an order for her immediate release. *See* Docket Item 1 at 13. Instead, consistent with the Second

14

Circuit's reasoning, this Court finds that an individualized bond hearing where the government bears the burden of justifying the petitioner's continued detention is the appropriate remedy. *See Black*, 103 F.4th 133 at 155-159. More specifically, due process entitles J.M.H. to an individualized bond hearing before an immigration judge where the government must show, by clear and convincing evidence, that her continued detention is necessary. *Black*, 103 F.4th at 155-59. At that hearing, the immigration judge must consider whether "alternatives to detention" would address the government's interest in ensuring J.M.H.'s appearance and the safety of the community. *See id.* at 155. And if the immigration judge decides that a bond might serve that interest, the judge must "consider [J.M.H.'s] ability to pay" in setting any bond amount. *See id.* at 158.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that J.M.H.'s motion to proceed under a pseudonym and for sealing, Docket Item 2, is GRANTED IN PART and DENIED IN PART without prejudice. To the extent that J.M.H. seeks to proceed under a pseudonym and to seal two exhibits submitted in connection with her habeas petition, her motion is granted, and the Clerk of the Court shall file the exhibits under seal. To the extent she moves to seal all future filings and court orders that implicate her privacy and safety interests, that motion is denied without prejudice to J.M.H.'s moving to seal any particular filing; and it is further

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release J.M.H. from detention unless a neutral

decisionmaker conducts an individualized hearing to determine whether her continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that J.M.H.'s continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure J.M.H.'s appearance and the safety of the community—that is, even with conditions, J.M.H. presents an identified and articulable risk of flight or a threat to the community; and it is further

ORDERED that the immigration judge must consider J.M.H.'s ability to pay when setting any bond amount; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order.

SO ORDERED.

Dated:   January 13, 2025
         Buffalo, New York

                                            */s/ Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE